UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Emmanouella Vendouri,
    Plaintiff

    v.                            Civil No. 10-cv-277-SM
                                     Opinion No. 2010 DNH 188
James F. Gaylord, Randal Zito,
Linda Evans, Winnacunnet
Cooperative School District,
and Nick Birmbas,
    Defendants

**CORRECTED ORDER**

This suit has been removed from the New Hampshire Superior
Court.  Emmanouella Vendouri, the noncustodial parent of Y.B.,
seeks injunctive relief against, and damages from, the
Winnacunnet Cooperative School District, three school
administrators,[1] and her ex-husband (Nick Birmbas).  She claims
that defendants deprived her of parental rights guaranteed by the
Fifth and Fourteenth Amendments to the United States Constitution
and Part I, Article 2 of the New Hampshire Constitution, by
failing to notify her on those occasions when her son, Y.B., was
either suspended from school for fighting, or dismissed from
school due to illness.  She also claims her rights were violated
when a member of her son's IEP team exchanged confidential

---

[1] Hereinafter, James Gaylord, Randal Zito, Linda Evans, and
the School District will be referred to collectively as "the
school defendants."

medical information with her son's physician without her
authorization and against her wishes.  Before the court is a
motion to dismiss filed by the school defendants.  Vendouri
objects.  For the reasons given, the school defendants' motion to
dismiss is granted, and Vendouri's claim against Birmbas is
dismissed <u>sua sponte</u>.


## The Legal Standard

A motion to dismiss for "failure to state a claim upon which
relief can be granted," FED. R. CIV. P. 12(b)(6), requires the
court to conduct a limited inquiry, focusing not on "whether a
plaintiff will ultimately prevail but whether the claimant is
entitled to offer evidence to support the claims." <u>Scheuer v.
Rhodes</u>, 416 U.S. 232, 236 (1974).  That is, the complaint "must
contain 'enough facts to raise a reasonable expectation that
discovery will reveal evidence' supporting the claims." <u>Fantini
v. Salem State Coll.</u>, 557 F.3d 22, 26 (1st Cir. 2009) (quoting
<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)).


When considering a motion to dismiss under Rule 12(b)(6), a
trial court "assume[s] the truth of all well-plead facts and
give[s] the plaintiff[s] the benefit of all reasonable inferences
therefrom." <u>Vernet v. Serrano-Torres</u>, 566 F.3d 254, 258 (1st
Cir. 2009) (quoting <u>Ruiz v. Bally Total Fitness Holding Corp.</u>,

496 F.3d 1, 5 (1st Cir. 2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  On the other hand, a Rule 12(b)(6) motion should be granted if "the facts, evaluated in [a] plaintiff-friendly manner, [do not] contain enough meat to support a reasonable expectation that an actionable claim may exist."  Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008) (citations omitted).

### Background

Vendouri and Birmbas were divorced in 2005.  They are the parents of Y.B., a student at Winnacunnet High School ("WHS"). Pursuant to a court order issued by the Portsmouth Family Division, Birmbas has "primary residential responsibility" for Y.B.  (See Defs.' Mot. to Dismiss, Ex. B, at 2.)  A subsequent court order, dated January 11, 2010, provides: "[W]ithin 5 days, [Vendouri and Birmbas] shall both contact [Y.B.]'s high school to direct that the school call father and mother in the event of an emergency or, if the school will call only one, that father list mother and mother list father as the **first** contacts in the event

either cannot be reached." (Defs.' Mot. to Dismiss, Ex. A, at
2.)

At the start of the 2009-10 school year, Vendouri filed an
emergency information card with WHS asking the school to notify
both her and Birmbas in the event of illness or an emergency
involving Y.B.  On several occasions during the course of the
school year, various WHS administrators assured Vendouri that she
would be notified if Y.B. fell ill or was involved in an
emergency.  On February 15, 2010, WHS Principal Randal Zito told
Vendouri that Birmbas had asked him not to contact her in case of
illness or emergency.

In October, Y.B. was suspended for fighting with another
student, but the school did not notify Vendouri.  Seven times
during the school year, WHS officials dismissed Y.B. due to
illness, but did not notify Vendouri.

In May of 2010, during an IEP meeting, Vendouri refused to
sign a release that would allow WHS officials to obtain
confidential medical records from Y.B.'s physician.  At some
point, she told the school not to contact Y.B.'s medical
providers.  At a subsequent IEP meeting, Vendouri provided Y.B.'s
IEP team with a report from Y.B.'s physician, recommending, among

4

other things, a special diet and an exercise program.
Thereafter, school officials contacted Y.B.'s physician and
exchanged confidential medical information with her.  During a
June 2010 meeting with Y.B.'s physician, Vendouri learned that
Birmbas had executed a release allowing Y.B.'s physician to
exchange medical information with WHS officials, and that Birmbas
had told Y.B.'s physician that an additional release from
Vendouri was not necessary.

Based upon the foregoing, Vendouri sued the school
defendants, under the provisions of 42 U.S.C. § 1983, claiming
that they deprived her of her fundamental right to parent her
son, as guaranteed by the Fifth and Fourteenth Amendments to the
United States Constitution.  She also claims that the school
defendants, along with her ex-husband, violated her rights under
Part I, Article 2 of the New Hampshire constitution.  The school
defendants argue, and Vendouri does not dispute, that the federal
and state constitutions provide identical protections.

## Discussion

The school defendants move to dismiss the complaint.  They
argue that neither the federal nor the state constitution
guarantees Vendouri the right to be notified when her son is
released from school to Birmbas, and that to the extent the

individual defendants have been sued in their individual
capacities, they are entitled to qualified immunity.  They also
contend, albeit briefly, that Vendouri fails to state a
cognizable claim based upon their exchange of medical information
with Y.B.'s medical providers, given that Birmbas, Y.B.'s
custodial parent, expressly authorized such an exchange of
information.  Vendouri responds by characterizing this case as
being "about a mother's constitutional right to participate
meaningfully in the upbringing of her minor son."  (Pl.'s Obj.
(document no. 12-1), at 1.)  The main issue, in her view, "is
whether the School Defendants . . . may effectively terminate a
noncustodial mother's parental rights, through measures that
deprive her altogether from the most important right to
participate in the care and management of her son."  (Id.)  She
relies on James v. Rowlands, 606 F.3d 646 (9th Cir. 2010), to
support her claim that defendants violated her constitutional
rights.

     "[T]he Due Process Clause of the Fourteenth Amendment
protects the fundamental right of parents to make decisions
concerning the care, custody, and control of their children."
Troxel v. Granville, 530 U.S. 57, 66 (2000).  That is, "[i]n a
long line of cases, [the Supreme Court has] held that, in
addition to the specific freedoms protected by the Bill of

Rights, the 'liberty' specially protected by the Due Process
Clause includes the righ[t] . . . to direct the education and
upbringing of one's children."  Id. (quoting Washington v.
Glucksberg, 521 U.S. 702, 720 (1997)).


     In Troxel, the Supreme Court held that a parent's
substantive due process rights were infringed by a Washington
statute providing that, with respect to minor children, " '[a]ny
person may petition the court for visitation rights at any time,'
and the court may grant such visitation rights whenever
'visitation may serve the best interest of the child.' " 530 U.S.
at 67 (quoting WASH. REV. CODE § 26.10.160(c)).  As the Court
wrote, "[t]hat language effectively permits any third party
seeking visitation to subject any decision by a parent concerning
visitation of the parent's children to state-court review."  Id.
By intruding so deeply into parental decisionmaking, the court
found, the Washington statute violated the parental rights
guaranteed by the U.S. Constitution.


     In the cases on which Troxel relied to establish the
principle that the Constitution protects the rights of parents to
make decisions concerning their children, substantive due process
violations were found where: (1) a state law prohibited schools,
including private schools, from teaching languages other than

7

English to students who had not yet passed the eighth grade, <u>see</u> <u>Meyer v. Nebraska</u>, 262 U.S. 390 (1923); (2) a state law compelled children between eight and sixteen years of age to attend public schools, <u>see</u> <u>Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary</u>, 268 U.S. 510 (1925); (3) a state law provided that "the children of unwed fathers become wards of the State upon the death of the mother," <u>Stanley v. Illinois</u>, 405 U.S. 645, 646 (1972); and (4) a state law compelled children to attend school until age sixteen, <u>see</u> <u>Wisconsin v. Yoder</u>, 406 U.S. 205 (1972).[2]

In <u>Meyer</u>, <u>Pierce</u>, <u>Stanley</u>, <u>Yoder</u>, and <u>Troxel</u>, the Supreme Court struck down intrusive state statutes that effectively deprived parents of the custody of their children, or expressly divested parents of the authority to make decisions about the upbringing and education of their children.  Here, by contrast, Vendouri makes no claim that the school defendants interfered with her custody of Y.B. – nor could she succeed on such a claim, given that Birmbas has been awarded primary residential responsibility for Y.B., following legal proceedings that afforded Vendouri a full measure of due process.  Similarly, she makes no claim that any of the school defendants usurped her

---

[2] In <u>Santosky v. Kramer</u>, 455 U.S. 745 (1982), the Supreme Court found a violation of a parent's right to procedural due process where a state law allowed the complete and irrevocable termination of parental rights based on a fair preponderance of the evidence, rather than clear and convincing evidence.

constitutionally protected parental rights by making a decision about Y.B.'s upbringing or education that should have been made by her.  In short, there is nothing in <u>Troxel</u> or any of the cases cited in <u>Troxel</u>, that affords Vendouri a constitutional right to notification by WHS whenever Y.B. is released from school, before the end of the school day, to the custody of his father.

The Ninth Circuit's decision in <u>James</u> is equally unavailing. As Vendouri correctly notes, the <u>James</u> court held "that the Fourteenth Amendment's protection of parents' rights requires officials to notify a parent with shared legal custody [but not physical custody] of a transfer in a minor's physical custody when the officials have encouraged and facilitated that transfer."  606 F.3d at 655.  The problem with Vendouri's reliance on <u>James</u> is that Vendouri has not alleged a transfer of Y.B.'s custody of a sufficient magnitude to trigger constitutional concerns or protections.  In <u>James</u>, the custodial parent, Gail Sherman, "agreed to sign a voluntary agreement with [the Nevada County Child Protective Services Agency] transferring [her daughter's] physical custody to [the child's maternal grandmother]."  <u>Id.</u> at 649.  Here, by contrast, on the facts alleged in the complaint, there was never any legal transfer of physical custody.  While Vendouri argues that a shift in physical custody occurs every time a child is released from school, the

9

daily termination of the <u>in loco parentis</u> relationship between a school and its students is not analogous to the legally agreed-upon transfer of physical custody from the mother to the grandmother in <u>James</u>.  Moreover, Vendouri does not allege that WHS administrators encouraged, endorsed, and effectuated Y.B.'s early release from school in nearly the same way the state actors in <u>James</u> brought about the transfer of physical custody of Gail Sherman's daughter.  Thus, <u>James</u> provides little support for Vendouri's claim of a constitutional right to notification when Y.B. is released from school due to illness or emergency.

Even if Vendouri had such a constitutional right, and that right was violated by the school defendants' actions in this case, those defendants would be entitled to qualified immunity. If the right on which Vendouri bases her claim exists at all, it was not clearly established at any time relevant to this case.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "  <u>Pearson v. Callahan</u>, 555 U.S. ___, ___, 129 S. Ct. 808, 815 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  Vendouri contends that her fundamental liberty interest

10

in meaningful participation in the education, care, and management of her son was clearly established at the time of the conduct she complains of, and so it was. But, that is not enough. See Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled on other grounds by Pearson, 129 S. Ct. at 813. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Accordingly, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." Wilson v. Layne, 526 U.S. 603, 615 (1999).

In this case, the right at issue is not the general parental right to direct the upbringing and education of her child. Defined at the appropriate level of specificity, the right at issue here is the claimed right of a noncustodial parent to be notified by her child's school whenever the child is dismissed from school to the parent who has been awarded legal and physical custody by a court of competent jurisdiction (or that parent's appropriate representative).

11

None of the relevant Supreme Court opinions, nor controlling decision by the United States Court of Appeals for the First Circuit, establishes such a right.  <u>James</u>, the opinion on which Vendouri relies, was decided after the conduct Vendouri complains of and identifies a significantly narrower parental right than the one Vendouri claims the school defendants violated in this case.[3]  Moreover, <u>James</u> holds that at the time of the conduct underlying that case, the right of a noncustodial parent to be notified of an actual legal transfer of custody was not clearly established.  If the narrow right at issue in <u>James</u> was not clearly established when the school defendants engaged in the conduct Vendouri challenges, then the broader right on which Vendouri bases her claim was not clearly established either.  In short, the decision in <u>James</u> did not make it "clear to a reasonable [WHS school official] that his conduct was unlawful in the situation he confronted."  <u>Saucier</u>, 533 U.S. at 202.  Because Vendouri has identified no other basis for determining that the right on which she bases her claim was clearly established, the school defendants are entitled to qualified immunity.

---

[3] The right established in <u>James</u> is the right of a noncustodial parent to be notified when his or her child's physical custody is legally transferred from one person to another.

12

Vendouri's medical-information claim is less developed than her notification claim.  She appears to assert that the school defendants violated her parental rights by asking Y.B.'s medical providers for, and then receiving, Y.B.'s confidential medical information (pursuant to a medical release executed by Y.B.'s father), after she had directed school officials not to contact her son's doctor and declined to execute a medical release.

Defendants argue, essentially in passing, that Vendouri's allegations fail to state a claim.  Vendouri does not respond. Nothing the school defendants are alleged to have done with respect to Y.B.'s medical information violated Vendouri's broad right (as limited by court order) to direct Y.B.'s upbringing and education.  Accordingly, the school defendants are entitled to dismissal of Vendouri's federal constitutional claim as that claim relates to their receipt of Y.B.'s medical information.

Regarding Vendouri's claims under the New Hampshire Constitution, the school defendants argue that Vendouri "does not claim that there is a different standard under state and federal law and there is not."  (Pl.'s Mem. of Law (document no. 7-1), at 4.)  Vendouri does not counter that argument.  Assuming a substantively identical standard, dismissal of the federal claims

13

against the school defendants also entitles them to dismissal of
Vendouri's identical claims under the New Hampshire Constitution.

Based on the foregoing, all that remains of this case is
Vendouri's claim against her ex-husband under Part I, Article 2
of the New Hampshire Constitution.  Birmbas has been served, but
has neither answered Vendouri's complaint nor moved to dismiss
the claim against him.  Ordinarily, the court would decline to
exercise supplemental jurisdiction over a state law claim after
all federal claims are resolved, and would remand the case to
state court.  <u>See</u> <u>Camelio v. Am. Fed'n</u>, 137 F.3d 666, 672 (1st
Cir. 1998).  Here, however, Vendouri's claim under the state
constitution is facially without merit – Part I, Article 2 of the
New Hampshire Constitution constrains the State, not private
citizens.  Thus, remand to the Superior Court would only serve to
tax valuable judicial resources for no good reason, and a
decision on the state constitutional claim by this court would
not offend principles of comity.  Because Vendouri plainly cannot
state a cognizable cause of action under the New Hampshire
constitution against her former husband, Birmbas is entitled to
dismissal of Vendouri's claim against him.

## Conclusion

For the reasons given, defendants' motion to dismiss (document no. 7) is granted, and Vendouri's claim against Birmbas is dismissed <u>sua sponte</u>.  The clerk of the court shall enter judgment in accordance with this order and close the case.


**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

October 26, 2010

cc:  Laurie A. Lacoste, Esq.
     Robert A. Shaines, Esq.
     Charles P. Bauer, Esq.
     Melissa A. Hewey, Esq.
     Jonathan S. Springer, Esq.